[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner's claims are set forth in the Amended Petition (Second) dated July 11, 1995. She alleges that the representation provided by her attorneys, Yvonne Rodriquez-Schack and Fred DeCaprio, at her 1993 criminal proceedings was deficient, that she was prejudiced by such deficient performance, and, therefore, that she was denied the effective assistance of counsel in violation of her constitutional rights.
The petitioner was charged with one count of larceny in CT Page 1414-EE the first degree and thirty-six counts of forgery in the second degree in connection with Docket Number CR92-0074640, Superior Court in the judicial district of Hartford/New Britain.
The amounts of the theft by embezzlement is $371,957.63 committed over a three year period while employed at the Combined Health Appeal. Ms. Sampson's employment duties consisted of maintaining all accounting payable and cash disbursement. She also was responsible for reconciling monthly banking statements and for operating the money market accounts, maintaining and preparing payroll checks, and information, and allocating numerous bills and maintaining and repairing checks and information.
Subsequently, the petitioner was also charged with larceny in the third degree in connection with Docket Number CR93-0076919.
During the pendency of the first file, Sampson obtained employment at Lucy Bolzell Shop, a clothing store, and during her employment Ms. Sampson had created a false account and ordered clothing to be delivered to her house via UPS under this false account. The amount of the loss was $4,609.94.
She embezzled approximately $370,000 from a charitable organization over a lengthy period of time. She held a position of trust in that organization. While on bond and awaiting trial, she stole from her new employer. She had no legal defense to the crimes charged, had confessed to her employer as well as the police. Had she gone to trial, and been convicted of all charges, she would have then faced a potential total effective sentence of two hundred and five years imprisonment.
When the case was transferred to Part A in Hartford, Attorney Fred DeCaprio was assigned to her case from the public defender's office. Attorney DeCaprio was petitioner's sole attorney for the ensuing ten months. He had to take an unexpected leave from the case when his infant son was diagnosed with brain cancer in March, 1993. Prior to his departure, he had met with petitioner numerous times to discuss her case and appeared in court on her behalf.
Attorney DeCaprio developed an impression that the judge CT Page 1414-FF hearing petitioner's case, Hon. Damiani, J., was particularly unimpressed with his client.
Attorney DeCaprio feared that even if he was able to obtain a particularly favorable plea agreement with the state, Judge Damiani might not accept it. Attorney DeCaprio made conscious, strategic decision to avoid serious pleas negotiations until after the next judicial rotation.
After Attorney DeCaprio's sudden and unexpected departure from petitioner's case in March, 1993, the case was assigned to Attorney Yvonne Rodriquez-Schack from the public defender's office.
Petitioner and Attorney Rodriquez-Schack met once on April 22, 1993. Attorney Rodriquez-Schack told petitioner there was no need for them to talk at length because she could learn everything she needed to know from the petitioner's file.
The petitioner's case was assigned to the presiding judge, Judge Damiani, in Hartford for pretrial. That judge considered a sentence of fourteen years, execution suspended after eight years, to be appropriate under the circumstances.
At the April 22, 1993 meeting, Attorney Rodriquez-Schack informed petitioner that an offer had been made for a sentence of fourteen years, suspended after eight years, with the requirement that petitioner pay restitution in return for petitioner's pleas of nolo contendere to the charges pending on both cases.
Attorney Rodriquez-Schack told petitioner she had one hour to make up her mind about the state's offer. She told petitioner that the state planned to request a bond increase if petitioner didn't take the deal and petitioner may have to go to prison immediately if bond were raised if she did not take the deal. Ms. Sampson had failed to maintain sufficient funds in her bank account. A check had been bounced and the state intended to request an increase in her bond. Ms. Sampson was a mother of two young children for whom she would need to make arrangements for care. Petitioner was told that if she took the plea, she would be given a few weeks to make such arrangements. CT Page 1414-GG
She was told that she would not be able to talk to Attorney DeCaprio. The petitioner testified that when she asked how long she would have to stay in prison and that Attorney Rodriquez-Schack responded that she would serve no more that three to six months in view of the fact that the prisons were over crowded and the crime was non-violent white collar offense.
The petitioner accepted the offer and pled nolo contendere to larceny in the first degree, larceny in the third degree and forgery in the second degree in violation of General Statutes §§ 53a-122 (a)(2), 53a-123 and 53a-139, in connection with Docket Number CR92-0074640 and Docket Number CR93-0076919. Her pleas were made pursuant to a court indicated sentence or State's offer of fourteen years incarceration, suspended after eight years, with four years probation with conditions of restitution.
She pled out after full and thorough canvass by Judge Damiani including whether she was entering the plea freely without threat or promise. She was later sentenced by Judge Damiani. To date, petitioner remains incarcerated and has been for more than two and a half years.
Judge Damiani had concerns about the conduct of Ms. Sampson. She had violated the law by a subsequent larceny (Lucy Bolzell Shop) while out on bond for the original 36 count embezzlement charge. There now presented a claim that Ms. Sampson had bounced a check.
On a prior occasion, Judge Damiani had raised Ms. Sampson's appearance bond and at a subsequent prior time Judge Damiani had called the bond and ordered a rearrest. Ms. Sampson, on the latter occasion referred to, had been in the Public Defender's Office when her case was called. The Judge on being advised vacated the forfeiture and reinstated the bond. At that time, the judge lectured both Ms. Sampson and counsel.
The petitioner alleges that she was denied the effective assistance of counsel when Attorney Rodriguez-Schack:
 1. Failed to acquaint herself with petitioner's case before entering into plea negotiations;
CT Page 1414-HH
 2. Failed to adequately acquaint herself with all of the circumstances pertaining to the charges against the petitioner before recommending the plea agreement;
 3. Failed to advise the petitioner of the ramifications of entering into a plea of nolo contendere;
 4. Failed to negotiate a fair and just plea agreement in proportion to the charges against the petitioner;
 5. Failed to completely investigate petitioner's defenses before recommending that petitioner enter a plea;
 i. The effects of defendants Rathes Cleft tumor on petitioner's behavior at the time of the offenses.
 ii. The petitioner's behavior was affected by depression related to past physical and/or mental abuse.
 iii. Petitioner's claim that she was innocent of the charges that she stole from Lucy Bolzell dress shop.
 6. Failed to preserve petitioner's right to argue for a lesser sentence at sentencing;
 7. Failed to adequately advise the petitioner of the total amount of time that she would be incarcerated if she accepted the plea;
 8. Coerced and intimidated the petitioner into entering into a plea on that day;
 9. Failed to advise the petitioner of the appropriateness of the offer; and,
 10. Recommended to the petitioner that this was a great offer.
CT Page 1414-II
Attorney DeCaprio represented the petitioner in court at the time of sentencing.
The petitioner further claims that she was denied the effective assistance of counsel at sentencing in that her attorney, Attorney Fred DeCaprio:
 1. Failed at the sentencing on June 17, 1993 to argue for a lesser sentence when he knew that the plea agreement was based on a harsh and unjust sentence that was grossly disproportionate from sentences received by other defendants charged with the same and/or more serious offenses;
 2. Failed to advise the petitioner to withdraw her plea due to her denial of effective assistance of counsel in violation of Practice Book § 721(4) when he knew that the sentence was harsh and unjust and was grossly disproportionate from sentences received by other defendants charged with the same and/or more serious offenses;
 3. Failed to rescue himself as trial counsel despite his inability to be objective about her case because of his romantic feelings towards her;
 4. Failed to rescue himself as trial counsel despite the fact that marital problems and his son's illness impaired his ability to represent the petitioner effectively;
 5. Failed to adequately present mitigating circumstances to the court regarding the imposition of sentence including but not limited to the following:
 a. The effects of defendant's Rathes Cleft tumor on petitioner's behavior at the time of the offense;
 b. That petitioner's behavior was affected by depressions related to past physical and/or mental abuse;
CT Page 1414-JJ
 c. Her diagnosis as a "compulsive stealer" unable to control her behavior.
The standard of review and the legal requirements of a petition for habeas corpus were succinctly stated in Copas v.Commissioner of Correction, 234 Conn. 139 (1995). The Connecticut Supreme Court noted that:
 A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . The right arises under the sixth
and fourteenth amendments to the United States constitution and article first, section 8, of the Connecticut constitution. . . . Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings and plea bargaining is an integral component of the criminal just system and essential to the expeditious and fair administration of our courts.
Id. 153.
"The right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction." Copas v. Commissioner of Corrections, supra,234 Conn. 154. In determining whether a petitioner's rights to effective assistance of counsel has been violated during a criminal proceeding, the defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness and (2) that defense counsel's deficient performance prejudiced the defense." Id. 155. In order to satisfy the second prong of the two part test, the petitioner must "[d]emonstrate that there is a reasonable probability that the result would have been different had it not been for counsel's deficient performance. A reasonable probability is a probability sufficient to undermine confidence in the out come." Id. 155. "The likelihood of a successful outcome at trial has been interpreted to include either the likelihood of acquittal or the likelihood of a more favorable sentence." Id. 162 n. 18. CT Page 1414-KK
In evaluating the assistance of counsel, our Supreme Court has cautioned that:
 Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.
(Emphasis added). Copas v. Commissioner of Correction,
supra, 234 Conn. 155-56.
Judge Damiani was the pretrial judge; the judge who had previously increased her bond when subsequent charges were imposed; the Judge who had previously called the bond and reinstated that bond; the judge who had previously lectured Ms. Sampson and Attorney DeCaprio; the judge who was to decide whether to increase the bond; the judge who took the plea and administered the canvass and the judge that imposed the sentence.
It is in this light and atmosphere that this court must review the claims of the petitioner as to ineffective assistance of counsel.
Ms. Sampson was at the time in question 30-31 years old, had held jobs that required a reasonable high degree of intelligence. She held positions of responsibility. She had breached that duty of responsibility skillfully embezzling over $350,000.00 over a long period of time. She had been twice divorced. She was a mother, had custody of her two children and was receiving support. She was not a stranger to court environment nor dealing with lawyers and the law nor to functioning under stress.
The court is not charged with determining whether the CT Page 1414-LL sentence imposed is fair. Sentence Review did accept this case and did review the sentence and did not disrupt the sentence of Judge Damiani. Nor will this court, nor should this court review this matter under a guise of what this court and any other court would have imposed as its sentence had it been so charged.
This court's charge is to examine the evidence as it presents itself at the time of plea and sentence as to whether or not Ms. Sampson had the effective assistance of counsel. The charges that were pending against Ms. Sampson, although serious in nature, were not difficult to understand, stealing money. The sentence permitted is clear and comprehensible. There were no defenses either as to the facts nor as to Ms. Sampson's mental state. Ms. Sampson had confessed. She submitted herself for examination by Dr. Bordon, a psychiatrist. Dr. Bordon was unable to provide a psychiatric bases for justification, in mitigation or excuse because of Ms. Sampson's mental state.
The strategy of Attorney DeCaprio was to do what he could to delay the case in order to hope for a more friendly judicial atmosphere. There is no bases to believe that it is likely or probably that such a tactic or strategy would have been successful. Eventually it was most likely, under the facts of this case, that Ms. Sampson would plead out. If not when she did then at some later time.
Attorney Rodriquez-Schack was aware of the file contents and of the circumstances. Counsel was presented with a situation with which counsel had to deal. Attorney Rodriquez-Schack was required to inform her client Ms. Sampson. An offer (and this court does not know whether the offer is a court indicated sentence or an offer by the state) was made and a representation that if the offer was not accepted a bond increase was going to be requested. A bond request that there was reasonable probability might be granted.
The petitioner claims that Attorney Rodriquez-Schack represented that she would probably only do 3 to 6 months on a 14 year suspended after 8 year sentence because it is a white collar crime, and prisons are crowded, etc. This court is unable to conclude by a fair preponderance of the evidence that such representation was made. Even if it were made, this court doubts whether Ms. Sampson would have CT Page 1414-MM accepted and relied on such. Ms. Sampson had ample opportunity to inquire when responding to Judge Damiani's canvass her subsequent conference with Attorney DeCaprio and at subsequent sentencing hearing before Judge Damiani while represented by Attorney DeCaprio.
While it may be true that over the years those sentenced to serve prison time have served 10%, 20%, 30% of the sentences depending upon the over crowding conditions of the prisons. That determination as to who would be granted early release has rested with the wardens not with the courts nor the state.
The petitioner has failed to carry her burden regarding any one of the claimed inadequacy of either of the defense attorneys.
There is no evidence that Attorney Rodriquez-Schack failed to adequately acquaint herself with Ms. Sampson's case before entering into a plea negotiation nor that Attorney Rodriquez-Schack didn't acquaint herself with the circumstances pertaining to the charges. Ms. Sampson knew of the ramifications of entering into a plea of nolo contendere. What is or is not a fair and just plea agreement is not a determination of this court, but has been addressed by Sentence Review. The petitioner had no defenses. There was no provision in the "offer" reserving right to argue by the petitioner for a lesser sentence. However, there is no evidence that she did not argue for such a reservation at pretrial. The record of this hearing is not clear as to whether the offer was one from the court as a court indicated sentence or an offer from the state. This court does not have an opinion as to what was discussed or not discussed as to time to be served for such a sentence except insofar as the claimed representation of Attorney Rodriquez-Schack, that she would serve 3 to 6 months which this court does not find to have been established by the petitioner to the weight required in this matter. The court has previously addressed that claim earlier in this decision. There is no evidence that counsel coerced and intimidated the petitioner to plea. Attorney Rodriquez-Schack advised Ms. Sampson of the offer and the threat of the state which, under the circumstances was not only proper for counsel to do, but was information that counsel was required to make known to Ms. Sampson. The court has no evidence of what is an appropriate sentence. The CT Page 1414-NN statute defining the crime sets the limit for appropriate sentence. This court concludes that the petitioner knew of the exposure she faced, and Sentence Review has found the sentence to be appropriate. There was no evidence that Attorney Rodriquez-Schack ever characterized the "offer" as being a great offer.
Attorney Fred DeCaprio returned and resumed active representation of Ms. Sampson at the sentencing before Judge Damiani. Attorney DeCaprio made a judgment that the best tactic and strategy was to seek relief before Sentence Review. There is no evidence direct or circumstantial that under circumstances of this case had Attorney DeCaprio argued for a lesser sentence, or sought permission to have Ms. Sampson withdraw her plea, that there was any likelihood that such would be granted. There is no evidence Attorney DeCaprio was unable to remain objective nor that his son's condition or claimed marital problems impaired his ability to represent Ms. Sampson at the sentencing. There is no evidence that Ms. Sampson's tumor in the brain had any affect upon Ms. Sampson's behavior nor that Ms. Sampson was affected with depression related to past physical and/or mental abuse. Nor is there any evidence presented in this case that Ms. Sampson was a "compulsive stealer" unable to control her behavior. Absent such evidence in this case, the court is without a bases to support the petitioner's claim that Attorney DeCaprio did not adequately present such circumstances to the court in mitigation of the sentence.
The court notes that the sentence was reviewed by Sentence Review. Attorney DeCaprio was successful in bringing the matter before that body in spite of the fact that the sentence appeared to be an agreed upon sentence not subject to such review.
This court notes that it was not furnished with a transcript of the sentencing procedure nor a presentence report and, therefore, was limited to testimony of Attorney DeCaprio and Ms. Sampson as to what did or did not occur at the time of sentencing hearing.
This court does not find that either Attorney Rodriquez-Schack or Attorney DeCaprio's representation of Stephanie Sampson fell below an objective standard of reasonableness. Nor does this court find that the petitioner CT Page 1414-OO Sampson was prejudiced by the alleged conduct of either one of the attorneys involved in the case. There has been no showing that there is a reasonable probability that the result would have been different had it not been for counsel's alleged deficient performance. There is no showing that counsel representation or lack thereof gave rise to a reasonable probability sufficient to undermine confidence in the out come of this case or the sentence imposed in this case.
Accordingly, judgment for the respondent on all counts.
John F. Walsh, J.